# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEPHEN BRYAN ZAVORSKI,

                Petitioner,

                                                **Case No. 1:04-cv-372**

v.                                            **Hon.  Wendell A. Miles**

JOHN CASON,

                Respondent.

_____/

## REPORT AND RECOMMENDATION

      Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

### I.      Background

      This case arose from a home invasion in Gladwin County, Michigan.  On February 29, 2000, following a jury trial, petitioner was convicted of one count each of: first-degree home invasion, M.C.L. § 750.110a(2); possession of a firearm during the commission of a felony, M.C.L. § 750.227b; and, felon in possession of a firearm, M.C.L. § 750.224f.  *People v. Zavorski*, No. 227973, slip op. at 1 (Mich. App. Oct. 1, 2002).  He was acquitted of an additional charge of receiving and concealing stolen property, M.C.L. § 750.535b.  *Id.*  Petitioner was sentenced as a third habitual offender, M.C.L. § 769.11, to concurrent terms of 17 1/2 to 40 years' imprisonment for the home invasion conviction and six to ten years' imprisonment for the felon in possession of

a firearm conviction.  *Id.*  Petitioner was also sentenced to a consecutive term of two years' imprisonment for the felony-firearm conviction.  *Id.*

Petitioner presented the following issues and sub-issues in his direct appeal to the Michigan Court of Appeals:

I.      A.      Did [petitioner's] suggestive pre-trial identification violate[] his right to due process under the United States and Michigan Constitutions and was any subsequent in-court identification [] tainted as fruit of the poisonous tree?

            B.      Was [petitioner] denied his right to counsel at a suggestive photographic lineup held four days prior to trial, where [petitioner] was in custody and the victim had previously been unable to identify him as the perpetrator?

            C.      Did counsel make a serious mistake that denied [petitioner] effective assistance of counsel in failing to demand an evidentiary hearing on a motion to suppress the identification of [petitioner]?

II.     Did the prosecution fail to produce sufficient evidence at trial to sustain a jury verdict, finding [petitioner] guilty beyond a reasonable doubt of the crime of first degree home invasion, [M.C.L. § 750.110a(2)]?

            A.      Is [petitioner's] conviction of felony firearm for possession of the firearms stolen in a home invasion legally infirm and must it be vacated?

III.    Did trial counsel make a serious mistake in stipulating to the introduction of a judgment of a prior breaking and entering conviction into evidence to "satisfy" the element of a felon in possession of a firearm charge?

IV.    Was [petitioner] denied his right to a fair trial under the Michigan and federal constitutions by the intentional prosecutorial misconduct where the prosecutor engaged in improper and highly prejudicial argument to the jury where he interjected irrelevant issues, mischaracterized the evidence, misstated the law and vouched for the truthfulness of his witnesses, and [denigrated] [petitioner] and his defense?

V.      Were the trial court's jury instructions reversibly erroneous where it:

    (A)    Failed to give the jury proper final instructions on the limitation of the use of "similar acts" evidence, CJI2d 4.11 after assuring [petitioner] that it would?

    (B)    Failed to give the jury proper cautionary and final instructions on the identification of [petitioner] as the person who committed the crime, CJI2d 7.8, his theory of the case?

    (C)    Failed to give the jury proper cautionary and final instructions on witness a [sic] disputed accomplice, CJI2d 5.5, and cautionary instruction regarding accomplice testimony, CJI2d 5.6, controlling issues in the case?

    (D)    Was trial counsel ineffective for failing to insure that the jury was properly instructed?

VI.      Did the trial court improperly assess [petitioner's] offense variable points, resulting in his sentence of 17 1/2 - 40 years being based upon an inaccurate sentencing guidelines range?

    (A)    Was counsel ineffective for failing to insure the accurate scoring of the sentencing guidelines prior record and offense variables?

Petitioner's appellate brief (docket no. 22).

The Michigan Court of Appeals affirmed petitioner's conviction. *People v. Zavorski,* No. 227973.

Petitioner raised the same issues in a delayed application for leave to appeal to the Michigan Supreme Court. *See* docket no. 23. The Michigan Supreme Court granted petitioner some relief as follows:

On order of the Court, the delayed application for leave to appeal Oct. 1, 2002 decision of the Court of Appeals is considered and, pursuant to MCR 7.302(F)(1), in lieu of granting leave to appeal, we MODIFY the judgment of the Court of Appeals to provide that the trial court erred when it scored five points for offense variable 17 on the sentencing guidelines. MCL 777.22(1). However, because proper scoring of the offense variables does not affect defendant's sentence, the error is harmless and trial counsel was not constitutionally ineffective for failing to raise

3

this issue at sentencing. In all other respects leave to appeal is DENIED because we are not persuaded that the questions presented should be reviewed by the Court.

*People v. Zavorski*, No. 12270 (Mich. June 12, 2003).

Now, petitioner raises the following issues in the present habeas petition:

I.    A.    [Petitioner's] suggestive pre-trial identification violated his right to due process under the United States and Michigan Constitutions and any subsequent in-court identification was tainted as fruit of the poisonous tree.

      B.    [Petitioner] was denied his right to counsel at a suggestive photographic lineup held four days prior to trial, where [petitioner] was in custody and the victim had previously been unable to identify him as the perpetrator.

      C.    Counsel made a serious mistake that denied [petitioner] effective assistance of counsel in failing to demand an evidentiary hearing on a motion to suppress the identification of the [petitioner].

II.    The prosecution failed to produce sufficient evidence at trial to sustain a jury verdict, finding [petitioner] guilty beyond a reasonable doubt of the crime of first degree home invasion, [M.C.L. § 750.110a(2)].

III.    Trial counsel made a serious mistake in stipulating to the introduction of a judgment of a prior breaking and entering conviction into evidence to "satisfy" the element of a felon in possession of a firearm charge.

IV.    The trial court's jury instructions were reversibly erroneous where it:

      (A)    Failed to give the jury proper final instructions on the limitation of the use of "similar acts" evidence, CJI2d 4.11 after assuring [petitioner] that it would;

      (B)    Failed to give the jury proper cautionary and final instructions on the identification of [petitioner] as the person who committed the crime, CJI2d 7.8, his theory of the case;

      (C)    Failed to give the jury proper cautionary and final instructions on witness a [sic] disputed accomplice, CJI2d 5.5, and cautionary instruction regarding accomplice testimony, CJI2d 5.6, controlling issues in the case;

4

      (D)    Trial counsel was ineffective for failing to insure that the jury was properly instructed.

Petition at pp. 1-3.

## II.      Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies.  *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A).  Petitioner has met the exhaustion requirement, with respect to all claims except Issues IV(A), (B) and (C).  See discussion in § IV. D., *infra*.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established Federal law if the state court arrived at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decided the case differently than a Supreme Court decision based upon a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Lopez v. Wilson*, 426 F.3d 339, 341 (6th Cir. 2005) (*rehearing en banc*). An unreasonable application of clearly established Federal law occurs "when the state court identified the correct legal principle from the Supreme Court but unreasonably applied the principle to the facts of the case before it." *Id.*

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

### III.   Petitioner's sub-issues I(A) and I(B) are barred by the doctrine of procedural default and not subject to habeas review.

#### A.   Procedurally defaulted claims

Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural

6

rule will warrant application of the procedural default doctrine.  Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine.  "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

Here, the Michigan Court of Appeals held that because petitioner did not object to the photographic evidence as "impermissibly suggestive" and that the victim's identification of him shortly before trial violated the discovery process, these issues were forfeited for appellate review. *Zavorski*, No. 227973, slip op. at 1-2. As reflected in the Michigan Court of Appeals opinion, there is no question that the procedural rule which requires preserving both constitutional and non-constitutional issues at the trial by contemporaneous objection was firmly established and regularly followed at the time of petitioner's appeal.  *See People v. Carines*, 460 Mich. 750, 764; 597 N.W.2d 130 (1999); *People v. Grant*, 445 Mich. 535, 546-47; 520 N.W.2d 123 (1994).  *See also, People v. Pollick*, 448 Mich. 376, 386-88; 531 N.W.2d 159 (1995), *quoting People v. Hardin*, 421 Mich. 296, 322-23; 365 N.W.2d 101 (1984) (court does not approve a procedure whereby counsel may "sit back and harbor error to be used as an appellate parachute in the event of jury failure").  Even though the state court provided limited review of the issues raised, petitioner's failure to object is still considered a procedural default.  *Paprocki v. Foltz*, 869 F.2d 281, 284-285 (6th Cir. 1989) (limited review of an issue to prevent manifest injustice does not constitute a waiver of the procedural default).   Based on this record, petitioner's claims I (A) and I (B) are procedurally defaulted.

7

Accordingly, habeas review of these claims is precluded unless he can demonstrate "cause for the default and actual prejudice as a result of the alleged violation of federal law," or that a failure to consider the claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

### B.      Ineffective assistance of counsel as cause for the procedural default

Petitioner gives no explicit cause for the procedural default of these issues. However, because petitioner claims that his trial counsel was ineffective for failing to demand an evidentiary hearing on a motion to suppress (i.e., Issue I(C)), the court will consider this claim as cause for the procedural defaults. Ineffective assistance of counsel may constitute cause for excusing a procedural default, *see Murray v. Carrier*, 477 U.S. 478, 488 (1986), but only when the performance of counsel was so deficient that it could not be considered the representation guaranteed by the Sixth Amendment. *See Strickland v. Washington,* 466 U.S. 668 (1984). In *Strickland*, the Supreme Court, set forth a two-prong test to determine ineffective assistance of counsel: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense, i.e., "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687.

### C.      Michigan Court of Appeals' decision regarding Issues I (A), (B) and (C)

The Michigan Court of Appeals performed a rather extensive "plain error" review of the procedurally defaulted issues, which included a discussion of petitioner's ineffective assistance of counsel claim:

> Defendant contends that the victim's pretrial identification violated his due process rights because the photographic lineup was "impermissibly suggestive." Although defendant objected below, he argued that the photograph was "not a fair and accurate representation" of him on either the day of the incident or the

preliminary examination. Defendant also contended that the victim's identification violated the discovery process because it occurred approximately one week before the trial started and the prosecutor failed to provide defendant this new information. As such, defendant did not challenge the suggestiveness of the photographic lineup below. As a result, this issue is forfeited for appellate review.

In order to avoid forfeiture under the plain error rule, defendant must prove the following: (1) error occurred, (2) the error was plain, i.e. clear or obvious, and (3) the plain error affected substantial rights. *People v. Carines*, 460 Mich. 750, 763; 597 NW2d 130 (1999). Generally, the third requirement requires a showing that the error affected the outcome of the lower court proceedings. *Id.*

"A photographic identification procedure violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v. Gray*, 457 Mich. 107, 111; 577 NW2d 92 (1997). In determining whether a photographic identification procedure is impermissible suggestive, we review the totality of the circumstances, including the following factors: "the opportunity for the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of a prior description, the witness' level of certainty at the pretrial identification procedure, and the length of time between the crime and the confrontation." *People v. Colon*, 233 Mich.App 295, 304-305; 591 NW2d 692 (1998). Where a defendant establishes that an identification procedure was impermissibly suggestive, the remedy is exclusion of the resulting in-court identification. *Gray*, *supra* at 114 n 8.

Here, we agree with defendant's assertion that the photographic lineup was impermissibly suggestive. At the preliminary examination, the victim testified that she did not know whether defendant was the person that struck her. However, at the trial-approximately one week after viewing the photographic lineup-she testified that defendant was, in fact, the person that struck her. Her testimony certainly suggested that it was the photographic lineup that formed the basis of her in-court identification. Accordingly, we believe that the admission of the victim's in-court identification was plainly erroneous.

However, as noted above, to avoid forfeiture, defendant must also show that the plain error affected the outcome of the proceedings. *Carines*, *supra* at 763. Although the victim's in-court identification may have been tainted by the photographic lineup, this "taint" was certainly presented to the jury. For example, during defense counsel's cross-examination, the victim conceded that she described the perpetrator as much smaller than defendant. Similarly, defense counsel elicited testimony that the victim was unable to identify defendant in a photographic lineup that took place shortly after the incident. Defense counsel's questioning significantly undermined the reliability of the victim's in-court identification. In light of the

record, it is more likely that the jury convicted defendant despite the victim's in-court identification, rather than because of her in-court identification.

Moreover, the prosecutor presented reliable and convincing identification testimony. Several witnesses, including defendant's brother, linked defendant to the crimes by placing the stolen contraband in his possession within hours of the incident. There was ample testimony indicating that defendant's behavior following the incident reflected a "consciousness of guilt." The testimony indicated that defendant had enough time to commit the crime between leaving work and arriving at his next destination. In light of this other evidence, we are not persuaded that the victim's in-court identification was "outcome determinative" of defendant's guilt. Consequently, defendant may not avoid forfeiture of this issue. *Carines*, *supra* at 763.

*People v. Zavorski*, No. 227973, slip op. 1-3 (footnote omitted).

The appellate court addressed petitioner's ineffective assistance of counsel claim in

a footnote:

Defendant also contends that trial counsel's failure to object to the in-court identification on the grounds that it was impermissibly suggestive deprived him of his constitutional right to effective assistance of counsel. Because defendant did not request a new trial or an evidentiary hearing on this issue, our review is limited to the facts on the record. *People v. Snider*, 239 Mich.App 393, 423; 608 NW2d 502 (2000). A successful claim of ineffective assistance of counsel requires a defendant to "show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant." *Id.* at 423-424. Again, in light of the damaging identification testimony introduced by witnesses other than the victim, we do not believe that defendant's conviction was based on the victim's in-court identification. Thus, defense counsel's failure to argue that the photographic lineup was impermissibly suggestive was not outcome determinative. Moreover, defense counsel's vigorous cross-examination, which significantly undermined the reliability of the victim's identification, prevents us from concluding that the representation was deficient. Therefore, defendant was not deprived of his constitutional right to effective assistance of counsel.

*Id.*, slip op. at 3 fn. 2.

**D.      Petitioner has failed to establish cause for the procedural default**

The undersigned agrees with the state appellate court's resolution of petitioner's ineffective assistance claim.  Substantial evidence connected petitioner with this crime. The victim described petitioner's vehicle, a white Lincoln, which she saw in her driveway just before the assault.  Trial Trans. I at 106, 115.  Willard Leyrer drove by the victim's house and identified a white Lincoln in the victim's driveway at the time of the break in.  Trial Trans. II at 13-15.  A few minutes later, the victim arrived at the house where Mr. Leyrer was visiting, and said that someone had been in her house, came running out, and beat her.  *Id.*  at 15.  The victim's husband identified some of the stolen property, i.e., the guns and video camera that were traced to petitioner's possession.  *Id.*  at 28-43.

On the day of the robbery, petitioner showed his brother, Michael Zavorski, the rifles and pistol in the trunk of his white Lincoln, gave them to Michael and asked him to "get rid of them."  *Id.* at 51-60.  Petitioner told Michael that he needed to trade in the white Lincoln, and Michael testified that petitioner "was trying to force [the used car salesman] to take it back."  *Id.* at 56.  When Michael heard about the robbery on the news, he called the Gladwin police to report "how my brother broke into this house and did this to this lady, and where they could find him."  *Id.* at 61-62.  After calling the police, Michael confronted petitioner, telling him that he was "all over the news," and that "they have a witness."  *Id.* at 64-65.   Petitioner said that the victim did not see anything because  "I put the bitch down."  *Id.* at 65-66.  Petitioner called Michael at about 3:00 or 3:30 a.m. on September 24th, stating that "I need money, clothes, a car."  *Id.* at 66.  Michael gave petitioner some money, food and a duffel bag of clothes and thought that petitioner had left town.

11

*Id.* at 66. Petitioner later met with Michael and asked to use his camper and Michael consented. *Id.* at 67-68. Michael later disposed of the guns. *Id.* at 69-74.

Randy Withrow, owner of a used car lot, testified that petitioner came to the car lot during the afternoon of September 23rd, and wanted to trade in a white Lincoln Mark VII. *Id.* at 118-20. Petitioner was "pretty insistent" and wanted another car, specifically a burgundy Buick Park Avenue. *Id.* at 119-20. Petitioner said that he could give Withrow money, camcorders and guns with the trade in. *Id.* at 121.

Petitioner had called another brother, Kenneth Zavorski and told Kenneth that he was "taking off" and that he had "f****d up." *Id.* at 151-52. Kenneth testified that petitioner and his girlfriend came to his house on September 26, 1999 and hooked up a camper which belonged to their brother, Michael Zavorski. *Id.* at 148-51, 153. Petitioner later threatened Kenneth Zavorski and his children because Kenneth had turned him in to the authorities. *Id.* at 159-61.

Dan Reed, a supervisor with a construction company, testified that petitioner was part of his work crew on September 23, 1999. *Id.* at 177-80. On that date, petitioner was driving a white Lincoln. *Id.* at 180. Petitioner left his shift early, around 12:30 p.m., purportedly to return a telephone call to his parole officer. *Id.* at 180-82. The next day, petitioner sold Reed a video camera for $150. *Id.* at 184-87.

Petitioner's probation officer, Donald Bauer, testified that he specifically remembered September 23rd, because it was his last day at work before having surgery. Trial Trans. III at 38-40. Mr. Bauer did not meet with petitioner on September 23rd and did not recall any telephone conversations with him on that date. *Id.* at 38-41.

12

David Holford  testified that he was in the holding tank at the Gladwin County jail with petitioner on September 27, 1999.  Trial Trans. III at 79-80.  Mr. Holford overheard petitioner on the jail telephone stating "[i]f the bitch wouldn't have come home, she'd never got hurt."  *Id.* at 80.  Holford also overheard petitioner stating that "they couldn't prove it was him [i.e., petitioner], because he has two different Lincolns [a white one and a blue one], and that he was supposed to be in some other town."  *Id.* at 80-81.  Holford also testified that petitioner stated that "he messed up because he had just got out on parole" and "something about his brother or brother-in-law had turned him in."  *Id.* at 81.

Even if petitioner's trial counsel had been deficient in failing to object to the victim's identification of petitioner, or failing to demand a hearing on the alleged "impermissibly suggestive" identification, any such deficiency did not prejudice petitioner.  The testimony of at least eight other witnesses connected petitioner to the crime.  Given this record, petitioner's ineffective assistance of counsel claim is without merit.  *See Strickland*, 466 U.S. at 687.  Accordingly, petitioner has failed to establish cause for the procedural default.

### E.   Fundamental miscarriage of justice

Petitioner's failure to demonstrate cause prevents federal review of his habeas claims unless the court's failure to do so will result in a  "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750.   In *Schlup v. Delo*, 513 U.S. 298, 321 (1995), the Supreme Court described the scope of the fundamental miscarriage of justice exception:

> To ensure that the fundamental miscarriage of justice exception would remain "rare" and would only be applied in the "extraordinary case," while at the same time ensuring that the exception would extend relief to those who were truly deserving, the Court explicitly tied the miscarriage of justice exception to the petitioner's innocence.

To meet the threshold requirement for actual innocence, a petitioner must persuade the court "that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Id*. at 329. *See, e.g. Paffousen v. Grayson*, No. 00-1117, 2000 WL 1888659 *3 (6th Cir. Dec. 19, 2000) ("[I]n order to establish actual innocence a petitioner must show that it is more likely than not that no reasonable juror would have convicted him"). Evidence sufficient to establish actual innocence "normally consists of exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial." *Paffousen*, 2000 WL 1888659 at *3.

Petitioner offers no new evidence that he is actually innocent of the crime for which he was convicted. Accordingly, he has failed to meet the fundamental miscarriage of justice exception. Having failed to meet the exception under *Coleman*, petitioner's Issues I (A) and I (B) are procedurally barred and not subject to habeas review.

### IV.     Petitioner's remaining claims are without merit.

### A.     Petitioner's trial counsel was not ineffective with respect to the victim's "impermissibly suggestive" identification (Issue I (C)).

In determining whether petitioner could demonstrate "cause" for the procedurally defaulted claims in § III. D., *supra*, the court decided that his counsel was not constitutionally ineffective for failing to demand an evidentiary hearing on a motion to suppress the victim's identification. Accordingly, petitioner's independent claim of ineffective assistance of counsel should be denied.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

14

presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

> **B.     Substantial evidence supports petitioner's conviction for first degree home invasion, M.C.L. § 750.110a(2) (Issue II).**

Next, petitioner contends that his conviction for first degree home invasion is not supported by sufficient evidence.  Specifically, petitioner contends the government presented insufficient evidence to support his conviction because the victim's eyewitness testimony was flawed.

The Michigan Court of Appeals addressed this claim as follows:

> Next, defendant challenges the sufficiency of the evidence supporting his convictions. A challenge to the sufficiency of the evidence requires us to determine "whether the evidence, viewed in a light most favorable to the people, would warrant a reasonable juror in finding guilt beyond a reasonable doubt." *People v. Nowack*, 462 Mich. 392, 399; 614 NW2d 78 (2000). Circumstantial evidence, and reasonable inferences arising from it, may be sufficient to prove the elements of a crime. *People v. Avant*, 235 Mich.App 499, 505; 597 NW2d 864 (1999).

> Specifically, defendant contends that there was insufficient evidence placing him at the scene of the crime. As noted above, the victim's in-court identification was not very reliable. However, the victim and another witness credibly testified that the perpetrator drove the same car that defendant did. Several witnesses placed stolen contraband in defendant's possession-and in defendant's car-shortly after the incident. As also noted above, several witnesses testified that defendant's behavior was consistent with someone who had committed the crime. Thus, viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence supporting the jury's finding that defendant was the perpetrator. *Nowack*, *supra* at 399.

> Defendant also contends that there was insufficient evidence supporting the first-degree home invasion conviction because there were no facts supporting the aggravating circumstances. MCL 750.110a(2) provides in pertinent part that a person is guilty of first-degree home invasion, rather than second-degree home invasion, if "at any time while the person is entering, present in, or exiting the dwelling" the person is either "armed with a dangerous weapon" or "[a]nother person is lawfully present in the dwelling." Defendant contends that even if the jury found that he possessed the firearms that he allegedly stole, there was no evidence that he was armed with the firearms at any time.

15

Generally, we review de novo issues of statutory construction. *Hinkle v. Wayne Co Clerk*, 245 Mich.App 405, 413; 631 NW2d 27 (2001). The *Hinkle* panel added:

> The primary goal of statutory interpretation is to give effect to the intent of the Legislature. This determination is accomplished by reviewing the plain language of the statute itself. If the statutory language is unambiguous, it is presumed that the Legislature intended the clearly expressed meaning, and judicial construction is neither required nor permitted. If the statutory language is ambiguous, only then may we look outside the statute to ascertain the Legislature's intent. [ Id. at 414 (citations omitted).]

Here, defendant fails to cite any authority indicating that there is a meaningful distinction between possessing a firearm and being "armed" with a firearm. MCL 750.110a does not define "armed." Similarly, our Legislature did not define "armed" in M.C.L. § 750.529, the armed robbery statute. In construing M.C.L. § 750.529, we have opined that a person may be convicted of armed robbery if he or she possesses a dangerous weapon because "the mere possession of a dangerous weapon escalates the risk of violence and the degree of danger to the victim, even if the weapon is not seen by the victim." *People v. Hayden*, 132 Mich.App 273, 294; 348 NW2d 672 (1984). We believe that this logic applies to home invasion. The risk of danger to victims (and perpetrators, for that matter) is greatly enhanced when the perpetrator possesses a dangerous weapon at any time during a criminal act. Indeed, the Legislature broadly defines "dangerous weapon" to include both unloaded and inoperable firearms. MCL 750.110a(1)(b)(i). Thus, we believe that the Legislature plainly intended for the mere possession of any firearm while committing a home invasion to constitute an aggravating circumstance. Consequently, we decline defendant's invitation to construe "armed" as requiring something more than mere possession.

Returning to the facts of the instant matter, there was circumstantial evidence indicating that defendant possessed the stolen firearms at some time during the home invasion. Accordingly, viewing the facts in a light most favorable to the prosecutor, sufficient evidence was introduced to support defendant's first-degree home invasion conviction. *Nowack*, *supra* at 399.

Defendant also challenges the sufficiency of the evidence supporting his felony-firearm conviction. MCL 750.227b provides that a defendant is guilty of felony-firearm where he or she "carries or has in his or her possession a firearm when he or she commits or attempts to commit a felony ...." Viewing the facts in a light most favorable to the prosecution, the evidence established that defendant possessed the firearms at some point during the home invasion. Defendant contends, however, that a felony-firearm conviction cannot be based on a firearm obtained during the commission of a felony.

16

In *People v. Mitchell*, 431 Mich. 744, 749-750; 432 NW2d 715 (1988), our Supreme Court reversed a felony-firearm conviction based on the theft of a firearm following a breaking and entering. The breaking and entering served as underlying felony. *Id.* at 745 n 3. The Court summarily opined that it did "not view a conviction on these facts as consonant with the legislative purpose underlying the felony-firearm statute." *Id.* at 749. Accordingly, the Court remanded to give the prosecutor an opportunity to establish that "defendant was in possession of a firearm during the commission of the breaking and entering." *Id.* at 750.

Accordingly, there is some merit to defendant's contention of error. However, we believe that the *Mitchell* decision is distinguishable. The elements of "breaking and entering" are as follows: "(1) the defendant broke into a building, (2) the defendant entered the building, and (3) at the time of the breaking and entering, the defendant intended to commit a larceny therein." *People v. Cornell*, 466 Mich. 335, 360; 646 NW2d 127 (2002). Thus, a breaking and entering is complete once the defendant, possessing the intent to commit a larceny, breaks into and enters the building. Any subsequent possession of a firearm would not, technically, be a possession during the commission of the breaking and entering, but possession after it is accomplished.

In contrast, defendant's underlying conviction was home invasion. A person is guilty of home invasion where he or she enters the dwelling without permission and, at any time, commits a felony or larceny. *See generally* M.C.L. § 750.110a. In other words, unlike breaking and entering, home invasion is a continuous felony-requiring both an unlawful entry and prohibited conduct. Thus, unlike a breaking and entering, a home invasion is not complete until the individual stops engaging in prohibited conduct within the dwelling. A defendant who possesses a firearm during the continuous felony does possess the firearm during the commission of the felony. Accordingly, we do not believe that the *Mitchell* decision precludes a finding that a defendant may be guilty of felony-firearm where the underlying conviction is home invasion based on the theft of firearms.

Here, as noted above, there was a sufficient factual basis to establish that defendant possessed the stolen firearms at some point during the home invasion, but before its conclusion. Accordingly, defendant's challenge to the sufficiency of the evidence supporting his felony-firearm conviction is without merit. *Nowack*, *supra* at 399.

*People v. Zavorski,* No. 227973, slip op. at 3-5.

In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that Fourteenth Amendment's Due Process Clause protects a criminal defendant against conviction "except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is

17

charged." *Winship*, 397 U.S. at 364.  Under *Jackson v. Virginia*, 443 U.S. 307 (1979), sufficient evidence supports a conviction if "after viewing the evidence in light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319 (emphasis added).  In determining whether sufficient evidence exists to support a conviction, the reviewing court must presume that the trier of fact resolved conflicting inferences of fact in favor of the prosecution, and must defer to that resolution. *Wright v. West*, 505 U.S. 277, 296-97 (1992).

The Michigan Court of Appeals applied the correct legal standard, in viewing the evidence against petitioner in "a light most favorable to the people."  *People v. Zavorski,* No. 227973, slip op. at 3.  As the court discussed in § III.D., *supra*, the prosecution presented substantial evidence, other than the victim's testimony, which linked petitioner to the crime.  Even if the victim's identification was flawed, the other evidence, when viewed in the light most favorable to the prosecution, is sufficient to support the conviction.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### C.      Trial counsel's stipulation to introduce a judgment of petitioner's prior breaking and entering conviction into evidence

Next, petitioner contends that counsel was ineffective because counsel stipulated to the introduction of a copy of the judgment of petitioner's prior breaking and entering conviction to

satisfy an element of the felon in possession of a firearm offense.  The Michigan Court of Appeals

addressed this issue as follows:

>    Defendant contends that he was deprived of his constitutional right to
> effective assistance of counsel because trial counsel should have simply stipulated
> to defendant's prior felony conviction (which was relevant to the felon in possession
> of a firearm charge). Instead, the jury heard that defendant had been convicted of
> breaking and entering. Defendant contends that he was prejudiced by the similarity
> between a breaking and entering and home invasion.

>    Again, defendant must "show that counsel's performance was deficient and
> that there is a reasonable probability that, but for the deficiency, the fact finder would
> not have convicted the defendant." *Snider*, *supra* at 423-424. Because defendant did
> not request a new trial or an evidentiary hearing on this issue, our review is limited
> to the facts on the record. *Id.* at 423.

>    Here, an argument can certainly be made that defense counsel should have
> stipulated that defendant had been convicted of "a felony," rather than allowing the
> jury to hear that defendant had been convicted of "breaking and entering." The jury
> only needed to know the date of his earlier conviction to determine whether
> defendant was a felon. Defendant may have been prejudiced by the similarity of the
> earlier conviction and the charges. However, it is not clear that substituting a vague
> reference to an unnamed felony would have reduced the prejudice. Moreover,
> defense counsel argued that it was defendant's breaking and entering conviction that
> caused the police to unfairly assume that he was guilty of the instant offense. This
> argument required that there be some nexus between the prior felony and the charged
> offense. Accordingly, we are not persuaded that trial counsel's representation was
> deficient.

>    Regardless, even if counsel was deficient for not stipulating to this fact, it did
> not affect the outcome of the proceedings. As noted above, several witnesses testified
> about defendant's possession of the stolen contraband, as well as his post-incident
> behavior. This evidence was far more damaging to defendant's case than the brief
> reference to his criminal past. Consequently, defendant was not deprived of his
> constitutional right to effective assistance of counsel.

*People v. Zavorski,* No. 227973, slip op. at 5-6.

Petitioner contends that counsel was deficient in agreeing to the admission of the

judgment and that the admission of this evidence was unduly prejudicial.  The court disagrees.  As

respondent points out, petitioner's counsel used petitioner's criminal history to his advantage by (1)

accusing the police of treating petitioner as a scapegoat and (2) explaining petitioner's flight from

after the crime.  As counsel stated in closing argument:

> For anyone to be accused of a crime is a horrible thing.  To have a past, to have a record and be accused of a crime and face the possibility of going back to prison, that's even scarier.

Trial Trans. IV at 68.

Counsel also argued that the police singled out petitioner, an ex-convict who had tried

to straighten out his life:

> And [Mike Zavorski] and [petitioner] have a conversation where Mike tells [petitioner], "They're coming after you."  And there was testimony that [petitioner] believed that any contact with the police would result in a violation of his parole.

> In an instant, his life has changed.  He's got a good job for FED.  He's got a woman and a life ahead of him.  And in that instant, his brother tells him, "You're it.  They are looking for you."

> [The prosecutor] has gone to great lengths to suggest that flight is evidence of guilt.  And it certainly can be.  But the judge will tell you today that flight in itself, an attempt to hide from the law, does not prove guilt.  A person may run or hide for innocent reasons, such as panic, mistake, or fear.

> However, a person may also run or hide because of consciousness of guilt.  That's the last thing on the list.  Panic.  Fear.  Mistake.  Those count, too; more so for [petitioner] than for very likely any of us.  You try and you try and you try.  You get a job.  You stay out of trouble.  A crime occurs, and you're the first one on the list.  And apparently the last one on the list, too.

> This case was closed in 48 hours.  The police had their man, courtesy of Mike Zavorksi.  There was no need to execute search warrants on Steve's home or his mother's mother's home.  There was no need to look for others to have done this because we have Mike Zavorski's statement.  And based upon this, they go out and they find [petitioner], who admittedly is lying low. . .

Trial Trans. IV at 68-69.

As the court previously discussed, a number of witnesses linked petitioner to the

crime. Counsel faced substantial, if not overwhelming, evidence pointing toward his client as the

perpetrator. Under these circumstances, it was a reasonable trial strategy for counsel to agree to the admission of the into evidence and then use it to reinforce his defense theory.  Accordingly, under the facts in this case, petitioner's counsel was not deficient.

Furthermore, the court agrees with the state appellate court's conclusion that this evidence did not affect the outcome of the trial.  In light of the extensive evidence against petitioner, the court concludes that the reference to a prior felony of breaking and entering did not deprive him of a fair trial.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### D.     Jury instructions

Next, petitioner contends that the trial court failed to give a number of jury instructions: CJI2d 4.11 (limiting use of "similar acts" evidence); CJI2d 7.8 (identification of defendant); CJI2d 5.5 (cautionary instruction on a witness as a disputed accomplice); and CJI2d 5.6 (cautionary instruction regarding accomplice testimony).  In addition, petitioner contends that his counsel was ineffective for failing to insure that the jury was properly instructed.

### 1.     Fair presentation

Before a state prisoner may seek habeas relief in federal court he must first fairly present the substance of his federal claims to all available state courts, thereby exhausting all state remedies. *Picard*, 404 U.S. 270; *Clemmons,* 34 F.3d at 354.  Here, petitioner has not exhausted his claims for habeas relief on Issues IV(A), (B) and (C), because he has not fairly presented any federal

claims to the state courts. Fair presentation has a substantive component and a procedural component. Substantive fair presentation is achieved by presenting the asserted claims in a constitutional context through citation to the Constitution, federal decisions using constitutional analysis, or state decisions which employed constitutional analysis in a similar fact pattern. *See Picard,* 404 U.S. at 277-78; *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993). In *McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000), the Sixth Circuit identified four actions that a petitioner can take which are significant to the determination of whether the substance of a claim has been "fairly presented" to the state courts:

> (1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law.

*McMeans*, 228 F.3d at 681 (citation omitted). "General allegations of the denial of rights to a 'fair trial' and 'due process' do not 'fairly present' claims that specific constitutional rights were violated." *Id.*

The procedural component of fair presentation relates to the manner in which the claims are presented to the state court for review. Thus, "[t]he fair presentation requirement is not satisfied when a claim is presented in state court in a procedurally inappropriate manner that renders consideration of its merits unlikely." *Black v. Ashley*, No. 95-6184, 1996 WL 266421 at *1 (6th Cir., May 17, 1996), *citing Castille v. Peoples*, 489 U.S. 346, 351 (1989).

In the present case, none of these three claims were fairly presented to the state courts. In his state court appeal, petitioner raised Issues IV(A), (B) and (C) as matters of state law. Petitioner cited one federal decision, *Olano v. United States*, 507 U.S. 725 (1993) for the proposition that the trial court's failure to give certain jury instructions were unpreserved, non-constitutional

allegations of plain error.  Petition at 32.  Petitioner neither raised federal constitutional arguments in the state appeal, nor fairly presented a federal claim to the state court as required by the Sixth Circuit's decision in *McMeans*.  Accordingly, these claims are unexhausted and not subject to federal habeas review.

The record reflects that petitioner has an avenue to exhaust these claims by filing a motion for relief from judgment pursuant to MCR § 6.500 *et seq*.  As a general rule, a habeas petition containing unexhausted claims should be dismissed without prejudice.  *See Rose v. Lundy*, 455 U.S. 509, 518-20 (1982).  However, under 28 U.S.C. § 2254(b)(2), federal courts have the discretion to deny habeas relief on the merits  regardless of whether the petitioner has exhausted his state remedies.  *See Jones v. Jones*, 163 F.3d 285, 299 (6th Cir. 1998).  *See, e.g.*, *Farley v. Lafler*, 193 Fed.Appx. 543, 549 (6th Cir. 2006) ("[the]AEDPA clearly provides that the district court could hear the unexhausted jury instruction claim and deny it on its merits to avoid further litigation for the sake of efficiency").

Here, the merits of petitioner's jury instruction claims are interwoven with his claim ineffective assistance of counsel claim.   In order to avoid further litigation in this matter, the court will review the merits of petitioner's jury instruction claims (Issues IV (A), (B) and (C)) along with the ineffective assistance claim (Issue IV(D)).   In this regard, the court notes that petitioner's counsel has limited his federal constitutional argument in this matter to the issue of ineffective assistance of counsel.  Petition at 51-52.

The Michigan Court of Appeals addressed petitioner's jury instruction claims  both on the merits and under the  ineffective assistance of counsel claim as follows:

> Defendant also contends that the trial court's jury instructions were erroneous. It should be noted, however, that defense counsel expressly approved the jury instructions after they were given by the trial court. Thus, defendant has waived

appellate review of the jury instructions. *People v. Carter*, 462 Mich. 206, 213-214; 612 NW2d 144 (2000).

Nevertheless, defendant further contends that defense counsel was ineffective for failing to raise these challenges to the jury instructions below. Again, our review of this issue is limited to the record, and defendant must "show that counsel's performance was deficient and that there is a reasonable probability that, but for the deficiency, the factfinder would not have convicted the defendant." *Snider*, *supra* at 423-424.

First, defendant contends that defense counsel was ineffective for failing to request a limiting instruction regarding the proper use of defendant's breaking and entering conviction. Defense counsel's strategy was to characterize defendant's prior conviction as the reason why the police wrongfully accused defendant of committing the crimes. As part of this strategy, defense counsel presented a consistent case to the jury. In other words, defense counsel's strategy may have been to demonstrate defendant's confidence in his innocence by allowing the jury to hear about the earlier crime without any limiting instruction. Alternatively, defense counsel may have decided that it was not worth reminding the jury about the breaking and entering conviction-even in the context of a limiting instruction. It is well established that we will not substitute our judgment "for that of trial counsel regarding matters of trial strategy, even if that strategy backfired." *People v. Rogers*, 248 Mich.App 702, 715; 645 NW2d 294 (2001). Accordingly, we are not persuaded that defense counsel was deficient for failing to request the jury instruction. *Snider*, *supra* at 423-424.

Second, defendant contends that defense counsel should have requested CJI2d 7.8. CJI2d provides a list of factors for a jury to consider when weighing identification testimony. Although the trial court did not read CJI2d 7.8, the trial court generally instructed the jury regarding some of the factors to consider when weighing witness testimony. Moreover, if CJI2d 7.8 had been read in full, the jury would have been instructed that it could "use the identification testimony alone to convict the defendant, as long as you believe the testimony and you find that it proves beyond a reasonable doubt that the defendant was the person who committed the crime." Thus, although CJI2d 7.8 includes several factors for the jury to consider that would have undermined the victim's identification testimony, it also would have invited the jury to convict defendant if it believed her testimony. Further, defense counsel vigorously cross-examined the identifying witnesses, and placed particular emphasis on the weaknesses in their testimony. In other words, defense counsel ensured that the jurors were aware of the weaknesses. Therefore, even if we were to find that counsel was deficient for failing to request the jury instruction, we would nevertheless conclude that the failure to request the jury instruction was not outcome determinative. *Snider*, *supra* at 423-424.

Finally, defendant contends that defense counsel was ineffective for failing to request CJI2d 5.5 and 5.6. CJI.2d 5.5(2) broadly defines an "accomplice" as a

24

"person who knowingly and willingly helps or cooperates with someone else in committing a crime." CJI2d 5.6 states: "In general, you should consider an accomplice's testimony more cautiously than you would that of an ordinary witness. You should be sure you have examined it closely before you base a conviction on it." CJI2d 5.6 further states that, in closely examining an accomplice's testimony, the jury should consider whether the accomplice has an interest in slanting his or her testimony against the defendant, has a criminal record, or was promised leniency by the prosecutor in exchange for his or her testimony.

Both of these instructions involve accomplices. Because one of defendant's theories was that his brother had committed these crimes, he contends that these instructions should have been given. Indeed, defense counsel elicited testimony indicating that the prosecutor agreed not to charge defendant's brother (for assisting defendant's flight and possessing the stolen firearms) if defendant's brother testified against defendant. Thus, there was a "deal," as contemplated by CJI2d 5.6. But defendant's brother was subject to vigorous cross-examination, which was sufficient to fairly present these issues to the jury. Accordingly, even if we were to conclude that defense counsel was deficient for failing to request these jury instructions, we would not conclude that the deficiency was outcome determinative. *Snider*, *supra* at 423-424.

*People v. Zavorski,* No. 227973, slip op. at 7-8.

In order to receive federal habeas corpus relief from incorrect jury instructions, petitioner must show that the instructions were so infirm as to render the entire trial fundamentally unfair. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Here, the Michigan appellate courts determined that the jury instructions were proper as a matter of state law. This court concurs with the state appellate court's reasoning regarding the impact of the jury instructions and finds no basis to support petitioner's claim that the jury instructions rendered his trial fundamentally unfair. In addition, the Michigan Court of Appeals performed a thorough review of the ineffective assistance of counsel issue raised by petitioner, using the appropriate constitutional standard as set forth in *Strickland*.

Petitioner cites *Newton v. Million*, 349 F.3d 873 (6th Cir. 2003) for the proposition that the due process clause requires criminal defendants to be afforded a meaningful opportunity to present a complete defense. Petition at 52. Petitioner's reliance on *Newton* is misplaced. In

*Newton*, the state trial court did not give the jury instructions for both manslaughter and self-defense. *Newton*, 349 F.3d at 878.  The Sixth Circuit, relying in part on *Mathews v. United States*, 485 U.S. 58 (1988), found that due process required such inconsistent instructions, where sufficient evidence existed to support such an affirmative defense.  *Id.*  Petitioner apparently contends that *Newton* should be extended to find a due process error for any instruction given in a state criminal trial with which this court might disagree, when he states that "[c]ounsel's failure to insure that the jury had sufficient instructions to evaluate his defense was a serious mistake that affected the outcome of his case."  Petition at 52.  Petitioner cites no authority to support this broad reading of *Newton*.  On the contrary, in *Newton*, the Sixth Circuit went on to say that it "found no Supreme Court case which holds that a criminal defendant's right to present a defense includes the right to a specific jury instruction."  *Newton*, 349 F.3d at 879.

Furthermore, the Sixth Circuit refused to overrule the state court's determination regarding the propriety of the jury instruction at issue:

> The jury was instructed on self-defense under the law of Kentucky. The nature of the particular instruction given is a matter of state law, and we are not at liberty to grant a writ of habeas corpus simply because we find the state court's decision was incorrect under state law.

*Newton*, 349 F.3d at 879.  Similarly, even if this court disagreed with the state courts' interpretation of state law, it is not at liberty to overrule the state court's decision regarding the propriety of the jury instructions at issue.

The Michigan Court of Appeals' resolution of this issue was neither contrary to, or an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence

presented.  28 U.S.C. § 2254(d).  Accordingly, petitioner is not entitled to habeas relief on this claim.

### V.       Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Entered:  June 27, 2007                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           U.S. Magistrate Judge

ANY OBJECTIONS to this Amended Report and Recommendation must be served and filed with the Clerk of the Court within ten (10) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order.  *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

27